BROWN *v.* STANDARD OIL CO.

1. APPEAL AND ERROR—DIRECTED VERDICT—EVIDENCE.
   In considering an appeal from judgment entered on a directed verdict for defendant, the Supreme Court views the testimony in the light most favorable to plaintiff.

2. MASTER AND SERVANT—INDEPENDENT CONTRACTOR—DEFINITION.
   An independent contractor is one who, carrying on an independent business, contracts to do a piece of work according to his own methods, and without being subject to the control of his employer as to the means by which the result is to be accomplished, but only as to the result of the work.

3. SAME—INDEPENDENT CONTRACTOR—EVIDENCE.
   Generally the circumstances showing one to be an independent contractor are the independent nature of his business, the existence of a contract for the performance of a specified

---

* See 3 Comp. Laws 1929, § 17338 *et seq.* (Stat. Ann. § 28.1082 *et seq.*).—REPORTER.
Definition of independent contractor, see 1 Restatement, Agency, § 2 (3).

piece of work, the agreement to pay a fixed price therefor, the employment of assistants by the employee who are under his control, the furnishing by him of the necessary materials, and his right to control the work while it is in progress except as to results.

4. SAME—GASOLINE FILLING STATION—DEATH OF LESSEE'S EMPLOYEE —LIABILITY OF LESSOR.

In common-law action by administrator of estate of alleged employee of lessee of oil company's gasoline filling station under lease expressly negativing reservation of any control by lessor over the business or operations conducted thereon or power of lessee to employ any persons for or on behalf of the lessor against lessor and lessee, where lessee conducted the station buriness as an independent contractor, lessor was not, as a matter of law, liable for death of employee who died from injuries received while repairing a tire.

5. SAME—GASOLINE FILLING STATIONS—DEATH—INDEPENDENT CONTRACTORS—QUESTION FOR JURY.

In action by administrator of estate of 19-year-old boy who received fatal injuries while repairing a truck tire against lessee of gasoline filling station, question as to whether or not decedent was an employee of the lessee or was an independent contractor *held*, for jury under evidence presented.

6. SAME—DEFENSES UNAVAILABLE TO ONE NOT SUBJECT TO WORKMEN'S COMPENSATION ACT—NEGLIGENCE.

While a lessee of a gasoline filling station who has not elected to become subject to the workmen's compensation act is deprived of the defenses of contributory negligence, assumed risks and negligence of fellow employees, one bringing an action against such lessee for injuries sustained by person claimed to have been an employee must show actionable negligence on the part of defendant lessee (2 Comp. Laws 1929, § 8407 *et seq.*).

7. SAME—REPAIR OF DUAL WHEEL TRUCK TIRE—PROPER TOOLS— NEGLIGENCE—QUESTION FOR JURY.

In action by administrator of the estate of a 19-year-old boy who was fatally injured while repairing a tire on inner wheel of truck dual wheel at gasoline filling station leased by defendant lessor to defendant lessee, question of whether or not lessee was negligent in failing to provide decedent with the proper tool or tools to do the work was for jury.

Appeal from Wayne; Murphy (George B.), J. Submitted April 5, 1944. (Docket No. 15, Calendar No. 42,475.) Decided June 5, 1944.

Case by Isaac Brown, individually and as administrator of the estate of William Brown, against Standard Oil Company, a corporation, and Al Jones for damages arising out of death of decedent. Directed verdict and judgment for defendants. Plaintiff appeals. Affirmed as to Standard Oil Company. Reversed and new trial granted as to defendant Jones.

*Ralph J. Osborne (Roxborough & Taliaferro,* of counsel), for plaintiffs.

*Kerr, Lacey & Scroggie (Wilfrid C. Dilworth* and *Benedict H. Lee,* of counsel), for defendant Standard Oil Company.

Starr, J. On October 11, 1938, while working at a gasoline service station in Detroit, William Brown, about 19 years old, sustained injuries which resulted in his death a few days later. His administrator began the present law action for damages against the Standard Oil Company, which owned the station, and defendant Al Jones, who leased and operated it.

Jones had operated said station for several years prior to May 5, 1937. On that date defendant company leased the station and the machinery, equipment, appliances, and fixtures connected therewith, to him for a 12-month period. The lease provided for successive renewal periods of six months each and for a monthly rental of $19.50, plus one-half cent per gallon on all gasoline delivered to said station. Jones, as lessee, was required to pay all ex-

penses in connection with the operation of the station and to keep it in good repair. The lease further provided:

"That none of the provisions of this lease shall be construed as reserving to the lessor any right to exercise any control over the business or operations of the lessee conducted upon the leased premises or to direct in any respects the manner in which any such business and operations shall be conducted, it being understood and agreed that so long as the lessee shall use said premises in a lawful manner as herein provided, the entire control and direction of such activities shall be and remain with the lessee.

"It is further understood and agreed that lessee shall have no authority to employ any persons as agents or employees for or on behalf of the lessor for any purpose, and that neither the lessee nor any other persons performing any duties or engaging in any work at the request of the lessee upon the leased premises shall be deemed to be employees or agents of the lessor."

The lease was renewed and defendant Jones was in possession of the station at the time plaintiff's decedent was injured. There was a sign across the front of the building reading, "Al Jones Super Service * * * Standard Oil Products." The station also sold automobile supplies and accessories and furnished services such as washing and greasing cars and changing and repairing tires. Plaintiff's decedent had worked at the station from about February, 1937, until he was injured. He washed cars, filled gasoline tanks, changed tires, sold merchandise, and did miscellaneous work.

On October 11, 1938, a customer of the station brought in a Ford truck with dual rear wheels, the tires on which carried a pressure of about 80 pounds. The tire on one inside wheel was flat. While working at the station, plaintiff's decedent had previously

repaired tires on this truck. The customer testified that he told defendant Jones, "I have got a flat tire," and that Jones replied, "All right, I will take care of it." It appears that to repair a tire on an inside dual wheel, the customary practice was to remove both wheels and to repair and inflate the tire on the inner wheel while it was so removed. The testimony indicates that on this occasion plaintiff's decedent removed the outer wheel but was unable to take off the inside wheel because he did not have the proper tool or wrench to remove the lugs or nuts. He attempted to do the tire-repair job without removing the inner wheel. He took off the tire, repaired the inner tube, and replaced the tire on the wheel. The casing of the tire was held in place by a steel rim. Apparently he did not replace or adjust the rim properly, because when he inflated the tire, the rim sprung loose and struck him on the head, causing fatal injury.

There was testimony indicating that the safest method would have been for decedent to take off the inner wheel, remove, repair, and replace the tire, affix the steel rim, and then inflate the tire while the wheel was lying on the ground with the rim side underneath. By such method, if the steel rim had sprung loose, it would not have struck him.

At the conclusion of plaintiff's proofs, each defendant moved for a directed verdict. The trial court granted both motions and entered judgment for defendants, from which plaintiff appeals. In considering an appeal from judgment entered on a directed verdict for defendant, we view the testimony in the light most favorable to plaintiff. *Lebovics* v. *Howie,* 307 Mich. 326; *Arnell* v. *Gordon,* 234 Mich. 140.

Defendant Standard Company based its motion for a directed verdict on the ground that plaintiff's decedent was not its employee; that the station was

leased to and operated by defendant Jones as an independent contractor; that if decedent was determined to be its employee, plaintiff could not recover in this law action because it had elected to come under the provisions of the workmen's compensation law (2 Comp. Laws 1929, § 8407 *et seq.*, as amended [Comp. Laws Supp. 1940, § 8407 *et seq.*, Stat. Ann. and Stat. Ann. 1938 Cum. Supp. § 17.141 *et seq.*]); that decedent had not given notice that he elected not to be subject to the provisions of said law; and that plaintiff's remedy, if any, was by proceedings before the department of labor and industry. Plaintiff contended that both decedent and defendant Jones were employees of the Standard Oil Company; that the company exercised complete control and supervision of the operation of the station; that the purported lease to Jones was merely a subterfuge by Standard Oil Company to escape liability as an employer; and that both defendants are liable in damages for their negligence in failing to furnish his decedent with proper tools.

The evidence shows that the station was under lease to and was occupied and conducted by defendant Jones at the time of decedent's injury. It shows that Jones hired and paid station employees, paid the expense in connection with the operation of the station, and generally conducted it as his own business without consultation with or interference by the Standard Oil Company. In *Zoltowski* v. *Ternes Coal & Lumber Co.*, 214 Mich. 231, we quoted with approval 26 Cyc. p. 1546, stating as follows:

"An independent contractor is one who, carrying on an independent business, contracts to do a piece of work according to his own methods, and without being subject to the control of his employer as to the means by which the result is to be accomplished, but only as to the result of the work. Generally the cir-

cumstances which go to show one to be an independent contractor, while separately they may not be conclusive, are the independent nature of his business, the existence of a contract for the performance of a specified piece of work, the agreement to pay a fixed price for the work, the employment of assistants by the employee who are under his control, the furnishing by him of the necessary materials, and his right to control the work while it is in progress except as to results."

See, also, *Eberly* v. *Sanders Lumber Co.*, 282 Mich. 315; *Holloway* v. *Nassar*, 276 Mich. 212; *Arkansas Fuel Oil Co.* v. *Scaletta*, 200 Ark. 645 (140 S. W. [2d] 684); *Reynolds* v. *Skelly Oil Co.*, 227 Iowa, 163 (287 N. W. 823); *Hudson* v. *Gulf Oil Co.*, 215 N. C. 422 (2 S. E. [2d] 26).

It clearly appears that defendant Jones as lessee conducted the station business as an independent contractor. Viewed in the light most favorable to plaintiff, the testimony does not show, nor could it be inferred, that plaintiff's decedent was an employee of the Standard Oil Company. The evidence presented no question of fact for jury determination as to whether or not decedent was an employee of the company, and in view of such conclusion, other questions relative to its liability do not require consideration. We find no error in the admission or exclusion of testimony relative to the liability of the company. We conclude the trial court did not err in granting defendant company's motion for a directed verdict.

Defendant Jones based his motion for a directed verdict on the ground that there was no proof of negligence on his part; and that plaintiff's decedent was guilty of contributory negligence. He also claimed that plaintiff's decedent was not his employee; that he did not pay him wages; but that he

permitted him to work around the station, doing odd jobs, as an independent contractor. Plaintiff contended in substance that his decedent was employed by Jones, and in his declaration alleged that "the relation of master and servant existed" between Jones and his decedent. He also contended in substance that Jones paid decedent weekly wages, controlled and directed his work at the station, and instructed him to make the truck-tire repairs which resulted in his fatal injury. He further claimed that defendant Jones was negligent in failing to provide his decedent with a safe place to work and with proper tools with which to do the tire-repair work in question.

There is conflict in the testimony as to the arrangement or agreement with defendant Jones under which decedent was working. His brother, who was present when decedent and Jones discussed the matter of employment, testified in part:

"Willie Brown (decedent) asked Mr. Jones whether or not he needed anyone to work. Mr. Jones replied, 'Yes, I needs a man around here, * * * certain minor things to be done,' and asked him what could he do. He (decedent) told him he used to pump gas, and knows how to handle oil and gas, grease cars, that's all, and Mr. Jones told him, 'Come back tomorrow and I will put you to work.'

"Q. Now, did * * * Willie Brown go to work there?

"A. Yes. He went back next day and went to work. * * *

"Q. Did you ever see how much he got?

"A. I have seen Mr. Al (Jones) pay him $10 a week and more. I have seen him pay as high as $13, but he paid him $10 a week regular. I have been there many Sunday mornings and seen Mr. Al pay him."

Defendant Jones denied that decedent was his employee. He testified in part:

"*Q.* Did this young man (decedent) work for you?

"*A.* He worked for himself. He washed cars; would go over to police pound No. 1 and repair brakes; he done various jobs, worked for himself. In return, kind of helped me and assist me in the station, because he appreciated it, that I let him stay around there."

The above-quoted and other testimony clearly presented a question of fact for jury determination as to whether plaintiff's decedent was an employee of Jones or was merely permitted to work at the station as an independent contractor. It is admitted that Jones had not elected to come under the workmen's compensation law. Therefore, if plaintiff's decedent was his employee, Jones was deprived of the defenses of contributory negligence, assumed risks, and negligence of fellow employees (2 Comp. Laws 1929, § 8407 [Stat. Ann. § 17.141]). However, it was necessary for plaintiff to prove actionable negligence on the part of Jones. *Williams* v. *Sealander,* 288 Mich. 617; *Kelley* v. *Brown,* 262 Mich. 356.

The testimony is conflicting and confusing as to whether or not Jones was negligent in failing to furnish plaintiff's decedent with the proper tools with which to remove the inner wheel from the truck. There was testimony indicating that, being unable to remove the wheel because not supplied with the necessary tools, decedent followed the more dangerous method of repairing and inflating the tire while the wheel was on the truck.

Assuming that plaintiff's decedent was an employee of Jones, we believe that the conflicting testi-

mony presented a question of fact for jury determination as to whether or not Jones was negligent in failing to provide decedent with the proper tool or tools to do the work in which he was engaged at the time of his injury. As the defenses of contributory negligence and assumed risk are barred, we are convinced that, viewing the testimony in the light most favorable to plaintiff, a question of fact was presented for jury determination. The trial court erred in granting defendant Jones', motion for a directed verdict.

The judgment for defendant Standard Oil Company is affirmed. The judgment for defendant Jones is reversed and a new trial granted.

Plaintiff shall recover costs from defendant Jones. Standard Oil Company shall recover costs from plaintiff.

NORTH, C. J., and WIEST, BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.